Betty M. GORDON, as personal representative of Thomas J. Gordon, III, Plaintiff-Appellant,

v.

MILWAUKEE COUNTY, Milwaukee County Medical Complex, Milwaukee County Mental Health Complex and Medical College of Wisconsin, Inc., Defendants-Respondents.

Court of Appeals

*No. 84–1576. Submitted on briefs March 5, 1985.— Decided May 15, 1985.*
(Also reported in 370 N.W.2d 803.)

For the plaintiff-appellant the cause was submitted on the briefs of *Kershek & Kershek,* with *E. Joseph Kershek* of counsel, of Milwaukee.

For the defendant-respondent Milwaukee County the cause was submitted on the briefs of *Robert E. Andrews,* principal assistant corporation counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   Betty Gordon, acting as personal representative for the estate of Thomas Gordon III, her son, appeals from a summary judgment which dismissed her claim against Milwaukee County, the Milwaukee County Medical Complex, and the Milwaukee County Mental Health Complex (collectively, the county). Gordon alleged that the county, through its employees, was negligent in its diagnosis and treatment of Thomas's mental condition and that it was negligent in releasing Thomas when it knew or should have known he was suicidal.   The trial court held that the county's actions were protected by governmental immunity under sec. 893.80(4), Stats.[1]   We hold that because the decision to

---

[1] Section 893.80(4), Stats., provides:

(4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its

release a person detained under sec. 51.15, Stats.,[2] requires the application of statutory language to the facts of the case, the decision is quasi-judicial and is protected by governmental immunity. We further hold, however, that because the diagnostic procedure followed by government psychiatrists involves only medical discretion, and not governmental discretion, negligence in the examination, testing, and diagnosis of the person detained is not protected by governmental immunity. Finally, we hold that because the affidavits submitted on the motion for summary judgment show the existence of genuine issues of material fact, the trial court erred in granting summary judgment for the county. We therefore reverse the judgment and remand the case for further proceedings.

On the evening of February 20, 1981, Thomas Gordon drove his car into a concrete bridge abutment. He told the police officers who came to investigate that he had attempted to commit suicide. The officers detained him for observation, pursuant to sec. 51.15, Stats. He was treated for minor physical injuries and was admitted to the Milwaukee County Mental Health Complex at 12:45 a.m. on February 21. The mental health complex treatment director's designee determined, pursuant to sec.

officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

[2] Section 51.15, Stats., provides in part:

Emergency Detention. (1) Basis For Detention. (a) A law enforcement officer or other person authorized to take a child into custody under ch. 48 may take an individual into custody if the officer or person has cause to believe that such individual is mentally ill, drug dependent or developmentally disabled, and that the individual evidences:

1. A substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm; . . . .

51.15 (4) (b), that Thomas was not eligible for involuntary commitment under sec. 51.20 (1) (a).[3] Thomas was released at approximately 11:30 that morning. He returned to his mother's home with his mother and his brother. Within an hour of his release, Thomas committed suicide.

Betty Gordon, Thomas's mother, filed a claim against Milwaukee County, the medical complex, and the mental health complex, alleging that the medical and psychiatric personnel were negligent in their diagnosis, treatment, and release of Thomas. The trial court granted the county's motion for summary judgment and dismissed Gordon's claim. It held that the county was immune from suit because the decision to release a person detained is "quasi-judicial" within the meaning of sec. 893.80 (4), Stats., and the county's unrebutted affidavits showed that the decision to release Thomas was properly made. We reverse.

## GOVERNMENTAL IMMUNITY

Under sec. 893.80 (4), Stats., no suit may be brought against a governmental body for the acts of its officers or employees done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions. The crux of the concept embodied in this subsection is the doctrine of separation of powers. The purpose of immunity is to

---

[3] Section 51.20 (1) (a), Stats., provides in part:

Involuntary Commitment For Treatment. (1) Petition For Examination. (a) Except as provided in pars. (ab), (am) and (ar), every written petition for examination shall allege that the subject individual to be examined:

1. Is mentally ill, drug dependent, or developmentally disabled and is a proper subject for treatment; and

2. Is dangerous because the individual:

a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm; . . . .

ensure that courts will refuse to pass judgment on the policy decisions made by coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, occurred. *See Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 687, 292 N.W.2d 816, 827 (1980). A major difficulty which may be avoided by applying principles of immunity is that a tort suit " 'furnishes an inadequate crucible for testing the merits of social, political, or economic decisions.' " *Payton v. United States,* 636 F.2d 132, 143 n. 26 (5th Cir. 1981).

The governmental functions which are immune from court review are sometimes denominated "discretionary" functions. In *Scarpaci,* the supreme court stated that the terms "discretionary" and "quasi-judicial or quasi-legislative" were synonymous. 96 Wis. 2d at 683, 292 N.W.2d at 826. The court defined a "quasi-judicial" act as one which involved the exercise of judgment and discretion in the application of a rule to specific facts. *Id.* at 683, 292 N.W.2d at 825–26.

In *Scarpaci,* the plaintiffs sued the county medical examiner for performing an autopsy on the plaintiffs' decedent which the plaintiffs alleged was not authorized by them or by the statute delineating when autopsies should be performed. The supreme court concluded that because the medical examiner's decision whether to perform an autopsy required that the examiner make an inquiry into the facts, apply the statute to the facts, and decide whether to perform the autopsy based on his or her subjective evaluation of the facts and the law, the decision whether to perform the autopsy was quasi-judicial under sec. 895.43(4), Stats.

The decision made by the treatment director (or treatment director's designee) to detain or release a person under sec. 51.15(4), Stats., is similar to the medical examiner's decision whether to conduct an autopsy. The

treatment director must make an inquiry into the facts of the person's case, must apply sec. 51.20 (1) (a) to those facts, and must decide whether to release the person based on his or her evaluation of the facts and the statute. Under *Scarpaci*, then, the decision whether to release a person detained under sec. 51.15 is quasi-judicial within the meaning of sec. 893.80 (4), Stats., and is protected by governmental immunity.

Our inquiry does not end here, however, because Gordon has alleged that county employees were negligent not only in releasing Thomas, but also in their examination and diagnosis of him. This is, in effect, an allegation that the county psychiatric and medical personnel were negligent in their inquiry into the facts of Thomas's case. We therefore must decide whether the "fact finding" portion of a quasi-judicial decision whether to release a person under sec. 51.15 (4), Stats., also is covered by governmental immunity. We hold that it is not.

An inquiry into the condition of a person alleged to be mentally ill requires that a psychiatric examination and diagnosis be performed. Performance of such an examination and diagnosis calls for the exercise of considerable judgment and discretion, but the discretion used is professional, or medical, not governmental. The *Scarpaci* court drew a distinction between medical and governmental discretion. *See Scarpaci,* 96 Wis. 2d at 686–87, 292 N.W.2d at 827. It stated: " 'It is only when the conduct involves the determination of fundamental governmental policy and is essential to the realization of that policy, and when it requires "the exercise of basic policy evaluation, judgment and expertise" that the immunity should have application . . . .' " *Id.* at 687, 292 N.W.2d at 827 (quoting Restatement (Second) of Torts sec. 895B comment d (1977) ). A psychiatric examination and diagnosis does not involve the determination or effectua-

tion of governmental policy. It therefore is not covered by governmental immunity.

The federal circuit courts of appeal reach a similar result when interpreting 28 U.S.C. sec. 2680(a) of the Federal Tort Claims Act (F.T.C.A.). Section 2680(a) contains an exemption for "discretionary functions." The courts, in determining whether decisions which involve some element of discretion are covered by immunity, distinguish between those decisions which are made at the "planning" level and those which are made at the "operational" level. "The general rule is that discretionary functions [within the meaning of the F.T.C.A.] are ones which involve policy choices." *Jablonski v. United States*, 712 F.2d 391, 396 (9th Cir. 1983).

Obviously, attending to many day-to-day details of management involves decisions and thus some element of discretion. The exercise of this kind of discretion does not fall within the discretionary function exemption. The distinction generally made in the application of the discretionary function exemption is between those decisions which are made on a policy or planning level, as opposed to those made on an operational level.

*Thompson v. United States*, 592 F.2d 1104, 1111 (9th Cir. 1979).

The court held in *Jablonski* that a government psychiatrist's failure to obtain a patient's medical records was an "operational" act, not a discretionary act involving planning, and thus was not immune under the F.T.C.A. 712 F.2d at 396–97. In *Payton v. United States*, 679 F.2d 475, 480–81, 482–83 (5th Cir. 1982), the court held that allegations that government psychiatrists had examined and treated a patient negligently were not covered by the discretionary functions exemption. *Accord, Durflinger v. Artiles*, 673 P.2d 86, 93–94 (Kan. 1983) (psychiatrists' recommendation that patient no longer

needed treatment was part of professional employment and was not insulated from liability if negligent). We find the reasoning of these cases persuasive.

The county argues that it should be held immune here, because a mental patient's future conduct cannot be accurately determined, and the county will be found liable merely for failing to accurately predict the future course of a patient's disease. The county overstates the burden placed upon it. It may be found liable only if the county-employed psychiatrists who examine and diagnose persons alleged to be ill and dangerous fail to exercise that degree of care and skill which would be exercised by the average psychiatrist acting in the same or similar circumstances. *See Scaria v. St. Paul Fire & Marine Insurance Co.*, 68 Wis. 2d 1, 17, 227 N.W.2d 647, 656 (1975). The concept of "due care" in evaluating psychiatric problems must take into account the inevitable difficulty in reaching a definitive diagnosis. *See Durflinger*, 673 P.2d at 97–98. A therapist who uses proper psychiatric procedures may not be negligent even though his or her ultimate diagnosis is incorrect. *See Lipari v. Sears, Roebuck & Co.*, 497 F. Supp. 185, 192 (D. Neb. 1980). The county thus will not have absolute liability imposed upon it for every error of medical judgment made; it need only assume responsibility for its employees' failure to exercise ordinary care.[4]

## SUMMARY JUDGMENT

The trial court granted the county's motion for summary judgment, holding that Gordon had not rebutted the

---

[4] The county argues that it is immune from liability because the decision that Thomas was not eligible for commitment was within the jurisdiction of the treatment director's designee. *See, e.g., Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 692–95, 292 N.W.2d 816, 830–31 (1980). The question whether a decision is within a judicial or quasi-judicial officer's jurisdiction is relevant

county's affidavits and the affidavits showed that the decision to release Thomas was "properly made." We hold that Gordon's affidavits contain facts which establish that there is a genuine issue for trial.

In reviewing a trial court's grant of summary judgment, we apply the standards set forth in sec. 802.08(2), Stats., in the same manner as the trial court. Summary judgment should be granted only when there appears on the record to be no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Wright v. Hasley*, 86 Wis. 2d 572, 579, 273 N.W.2d 319, 322–23 (1979). A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy. Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment. When the material presented on the motion is subject to conflicting interpretations or reasonable persons might differ as to its significance, summary judgment is improper. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W. 2d 473, 477 (1980).

In support of its motion, the county submitted affidavits by Dr. Debra Harris and Dr. Janis Strickler, who were employed as resident psychiatrists at the mental health complex in February, 1981. Dr. Harris stated in her affidavit that she examined Thomas when he arrived at the complex. She stated that Thomas showed no evidence of thought disorder or of any psychotic process, that he denied vegetative symptoms of major depression, and that there was no indication of mental illness as defined in the statutes.

only when the officer is personally made a defendant in the suit. Gordon has not sued the treatment director or his designee personally; thus, the question of their jurisdiction is irrelevant.

Dr. Strickler, the treatment director's designee, stated in her affidavit that she examined Thomas later in the morning of February 21. She stated that Thomas was calm and cooperative during the interview, that he denied he really meant to kill himself and gave a rational explanation for the accident, that he showed no psysical signs of depression, that he maintained good eye contact and spoke at a normal rate and volume, that he was making plans for his future, and that he was not mentally ill or a danger to himself as defined in the statutes.

Betty Gordon submitted affidavits in opposition to the county's motion. Gordon's own affidavit and an affidavit by Mary Jane Ciezki, Thomas's aunt, both state that they saw Thomas immediately before his release from the mental health complex, that Thomas looked extremely white, drained, drawn out, despondent, and depressed, that he moved and talked very slowly, and that after he was released he was withdrawn and did not want to talk to anyone. Gordon and Ciezki further state that Thomas told them before he was released that he had not yet seen anyone on the psychiatric staff, and that at or about the time of his release, he spoke with a staff member for less than three minutes.

Gordon's and Ciezki's affidavits thus raise factual issues as to the extent and adequacy of the psychiatric examination Thomas was given. The affidavits also raise factual issues as to what Thomas's appearance and behavior were at the time of his release, and, inferentially, whether his appearance and behavior would have led a reasonably prudent psychiatrist to do a more extensive examination of him, and whether county psychiatrists were negligent in failing to diagnose Thomas as suicidal.

The trial court disregarded Gordon's and Ciezki's statements as to what Thomas had said about his treatment

because the statements were hearsay. Even though the statements were hearsay, however, they would have been admissible at trial as statements of recent perception made by a declarant who was unavailable at the time of trial. Sec. 908.045(2), Stats. Section 802.08(3), Stats., provides that affidavits supporting and opposing summary judgment motions "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." Here, Gordon and Ciezki had personal knowledge of Thomas's statement, and the statement itself was admissible under an exception to the hearsay rule. The trial court erred by disregarding that portion of Gordon's and Ciezki's affidavits.

## EQUAL PROTECTION

Gordon challenged the trial court's interpretation of sec. 893.80(4), Stats., on constitutional grounds. She claimed that classifying psychiatrists into two groups, private and governmental, with the effect that patients negligently injured by the one group could be compensated, but patients negligently injured by the other group could not, violated her right to equal protection. Because we hold that governmental psychiatrists must meet the same standard of care in the exercise of their professional medical judgment that private psychiatrists must meet, the basis of Gordon's equal-protection claim has been eliminated.

In summary, we hold that although the decision to release Thomas from the mental health complex was quasi-judicial and therefore was protected by governmental immunity under sec. 893.80(4), Stats., the process by which Thomas was examined and diagnosed involved only medical, and not governmental, discretion, and therefore was not protected by governmental immunity. We further hold that because the affidavits show disputed issues of material fact regarding the county's examination

and diagnosis of Thomas, the trial court erred by granting summary judgment for the county.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.