James C. KIMPTON, Duane Kimpton and Carolyn Kimpton, Plaintiffs-Appellants,

CENTRAL LIFE ASSURANCE CO., American States Ins. Co., Wisconsin Life Ins. Co., Fond du Lac County Unified Board, Winnebago County Unified Board and Tri-County Community Board, Plaintiffs,

v.

SCHOOL DISTRICT OF NEW LIBSBON, School Board of the School District of New Lisbon, Employers Mutual Casualty Company, Employers Insurance of Wausau, a mutual company, Defendants-Respondents,

David A. SEGERSTROM, Defendant,

ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS, Intervening Plaintiff.

Court of Appeals

*No. 85–2223. Submitted on briefs December 10, 1986.—Decided March 19, 1987.*

(Also reported in 405 N.W.2d 740.)

226

For the plaintiffs-appellants the cause was submitted on the briefs of *Jack McManus* and *Edward W.J. Falkner* and *McManus Law Offices* of Madison.

For the defendant-respondent Employers Mutual Casualty Company the cause was submitted on the brief of *Barbara J. Swan* and *Brynelson, Herrick, Bucaida, Dorschel & Armstrong* of Madison.

For the defendants-respondents School District of New Lisbon, School Board of the School District of

New Lisbon and Employers Insurance of Wausau the cause was submitted on the brief of *Fred D. Hollenbeck* and *Curran, Curran & Hollenbeck, S.C.* of Mauston.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. James Kimpton and his parents, Duane and Carolyn, appeal from a summary judgment dismissing their action against the New Lisbon School District and its insurers, Employers Insurance of Wausau and Employer's Mutual Casualty Co. The Kimptons sought money damages from the district, claiming that it negligently allowed a sexual relationship to develop between James, a New Lisbon high school student, and one of his teachers, David Segerstrom. The complaint also stated a claim against the district under the Federal Civil Rights Act, 42 U.S.C. sec. 1983 (1982), for violation of James's constitutional rights.

The issues are (1) whether the Kimptons' negligence claims are barred by sec. 893.80(4), Stats., and (2) whether issues of material fact exist with respect to the sec. 1983 claim. We resolve both questions against the Kimptons and affirm.

In 1980, Segerstrom initiated a sexual relationship with James. The relationship continued through the fall of 1983, and the majority of the sexual contacts took place on school premises. James hid the relationship from others and never discussed it with anyone until December, 1983. Eventually, his disclosures led to Segerstrom's arrest and conviction for sexual assault. Prior to his arrest, Segerstrom had told no one about the relationship and no school administrator or board member was aware of its existence.

The Kimptons' state action alleged several acts of negligence by the district which may be grouped under two general headings: (1) negligence in hiring, training, and supervising Segerstrom; and (2) negligence in assigning and failing to provide for regular inspection of teachers' rooms.[1] Their sec. 1983 action alleged that Segerstrom's "intentional, wilful, and wanton" conduct was undertaken under color of state law and deprived James of his constitutional rights.

The circuit court granted the district's motion for summary judgment and dismissed both claims. The court held: (1) that the Kimpton's negligence claims involved quasi-legislative actions for which the district could not be sued under sec. 893.80(4), Stats; and (2) that the Kimptons' pleadings and affidavits were insufficient to establish a sec. 1983 claim because they failed to establish that any district policy or custom resulted in a violation of James's federal rights.[2]

In summary judgment cases we follow the same procedure as the trial court. *Board of Regents v. Mussallem,* 94 Wis. 2d 657, 674, 289 N.W.2d 801, 809 (1980). Our first inquiry is whether the complaint states a claim upon which relief may be granted. *Prah v. Maretti,* 108 Wis. 2d 223, 228, 321, N.W.2d 182, 185

---

[1]The complaint also asserted that the district was liable for Segerstrom's intentional torts. The trial court determined that this claim was barred by sec. 893.80(4), Stats., and dismissed it. The issue is not argued, however, and we also note that the Kimptons have abandoned any claim based on the district's failure to promulgate appropriate rules, regulations, and policies.

[2]The trial court also dismissed the Kimptons' claims because they failed to comply with the 120 day notice rule under sec. 893.80(1)(a), Stats. We do not address this issue, since the affidavits do not indicate when the notice was filed.

(1982). If it does, and if the defendant's answer joins the issue, we look to the moving party's affidavits to see whether a prima facie case for summary judgment—here a defense which would defeat the Kimptons' action—has been established. If it has, we then examine the other party's affidavits and other proof to ascertain whether any material facts are in dispute. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983).[3] If no material factual disputes exist, we proceed to decide the motion.

The Kimptons' complaint alleged that the district was negligent in (1) hiring, training and supervising Segerstrom and "entrust[ing]" him with a teacher's authority; (2) inadequately "inspect[ing]" the school premises; (3) inadequately investigating "complaints and or comments" of other teachers "which would have stopped some, if not all of the ... molestations";

---

[3]In *Hiltpold v. T-Shirts Plus, Inc.,* 98 Wis. 2d 711, 716, 298 N.W.2d 217, 219 (Ct. App. 1980), and *James v. Aetna Life & Casualty Co.,* 109 Wis. 2d 363, 368, 326 N.W.2d 114, 116 (Ct. App. 1982), we stated that our inquiry in reviewing summary judgments is to "independently determine ... whether ... the trial court clearly abused its discretion." The statements had their origin in *Jones v. Sears Roebuck & Co.,* 80 Wis. 2d 321, 325, 259 N.W.2d 70, 71 (1977), one of at least two cases in which the supreme court used such language. The other case, *Arnold v. Shawano County Agr. Society,* 111 Wis. 2d 203, 209, 330 N.W.2d 773, 776 (1983), was expressly overruled in *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 317, 401 N.W.2d 816, 821 (1987): "We now wish to clarify any existing ambiguity by unequivocally stating that ... [t]o the extent that the *Arnold* language may be construed so as to retain or advance the abuse of discretion standard ... that language is hereby withdrawn." We withdraw the similar statements in *Hiltpold* and *Jones.*

and (4) "entrust[ing]" school offices and rooms to Segerstrom. The district's answer joined the issues.

The district's motion for summary judgment was accompanied by affidavits establishing the following facts. Segerstrom was hired by the district in 1963, and while it was known that he had had an alcohol abuse problem prior to that time, his teaching credentials were excellent. While he had engaged in occasional homosexual relationships prior to 1963, this fact was unknown to the district; and he had none from 1963 to 1980, when the relationship with James began. The district was not aware that Segerstrom had also been convicted of breaking and entering sometime prior to 1963.

Segerstrom's twenty-year career at New Lisbon High School was uneventful. On one occasion he was chastised for an outburst in the lunchroom, and there was some "gossip" or "rumor" that he had at one time pushed an elementary school student. There were also two complaints that he had been unnecessarily harsh in disciplining students. Aside from this, no one connected with the school board was aware of any facts, or even any rumor or "hearsay," relating to improper conduct on Segerstrom's part. None of the school officials, employees or school board members had any knowledge of Segerstrom's relationship with James, and none had observed or heard of anything "suspicious" about his conduct. The school janitor had seen a sleeping bag in Segerstrom's room on occasion. He did not consider this unusual, however, as he knew Segerstrom to be an outdoorsman. Segerstrom also kept a small mattress at the school which he and his wife would sit on when they attended gymnasium events.

The Kimptons submitted three affidavits in opposition to the motion. James's affidavit contains only the conclusory statement that school officials never did anything to detect the relationship, and could have done so "if [they] had taken the time or effort to try." His parents' affidavit states: (1) that the school never held any programs or meetings to inform parents of efforts being made to protect students from such assaults; and (2) that, despite knowledge of "nationwide" incidents of teacher/student sexual assaults, the district did nothing to discourage similar conduct at New Lisbon.

A third affidavit incorporates portions of the depositions of several school employees and school board members. The depositions indicate that while Segerstrom's credentials and references were checked when he was first hired, no inquiry was made into whether he had a criminal record, or had engaged or was engaging in sexual relations with students. The affidavit also states that although Segerstrom's classroom was monitored to the same extent as those of other teachers, no one was sent into his office to "try to find things that were wrong."

## I. *THE NEGLIGENCE CLAIMS*

Section 893.80(4), Stats., provides in part that "[n]o suit may be brought against any ... political corporation, governmental subdivision or any agency thereof ... or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative judicial or quasi-judicial functions."

Generally, "[a] quasi-legislative act involves the exercise of discretion or judgment in determining the

policy to be carried out or the rule to be followed," while "a quasi-judicial act involves the exercise of discretion and judgment in the application of a rule to specific facts."[4] *Lifer v. Raymond,* 80 Wis. 2d 503, 511–12, 259 N.W.2d 537, 541 (1977) (footnote omitted).

[4]In *Maynard v. City of Madison,* 101 Wis. 2d 273, 282, 304 N.W.2d 163, 168 (Ct. App. 1981), the court stated that quasi-judicial acts necessarily invoked "essentially judicial procedures such as notice, hearing, exercise of discretion and a decision on the record," citing *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 683, 292 N.W.2d 816, 826 (1980), and *Coffey v. Milwaukee,* 74 Wis. 2d 526, 533–34, 247 N.W.2d 132, 136 (1976).

While the statement was indeed made in those cases, other holdings of the court indicate that any such requirement is quite loosely interpreted. Indeed, the *Scarpaci* court, recognizing that "quasi-judicial" is synonymous with "discretionary," held that a medical examiner's decision not to perform an autopsy was a quasi-judicial act because it involved the examiner's exercise of discretion based on a subjective evaluation of the facts and law. *Id.,* 96 Wis. 2d at 684–85, 292 N.W.2d at 826.

Other acts far removed from "judicial-type" procedures that have been recognized as quasi-judicial include: the issuance or denial of a building permit (*Coffey,* 74 Wis. 2d at 533, 247 N.W.2d at 136); the failure to fire a police officer (*Salerno v. Racine,* 62 Wis. 2d 243, 249, 214 N.W.2d 446, 449–50 (1974)); a district attorney's decision not to hold an inquest (*State ex rel. Kurkierewicz v. Cannon,* 42 Wis. 2d 368, 378, 166 N.W.2d 255, 260 (1969)); a sewerage district's approval of sewer construction plans (*Allstate Ins. v. Metropolitan Sewerage Comm.,* 80 Wis. 2d 10, 16, 258 N.W.2d 148, 150 (1977)); and a hospital treatment director's release of a patient (*Gordon v. Milwaukee County,* 125 Wis. 2d 62, 67, 370 N.W.2d 803, 806 (Ct. App. 1985)).

Thus, despite comments in *Maynard* emphasizing the "notice and hearing" aspect of quasi-judicial acts, other cases treat the term as synonymous with "discretionary," *Gordon,* 125 Wis. 2d at 66, 370 N.W.2d at 806, or "nonministerial." *Lifer,* 80 Wis. 2d at 512, 259 N.W.2d at 541–42. To the extent our language in *Maynard* suggests a contrary or different rule, we withdraw it.

"[They] are, by definition, nonministerial acts." *Id.* at 512, 259 N.W.2d at 541–42 (footnote omitted). "The governmental functions which are immune from court review are sometimes denominated 'discretionary' functions." *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 66, 370 N.W.2d 803, 806 (Ct. App. 1985). The terms "quasi-judicial" and "quasi-legislative," have been held to be synonymous with discretionary. *Id.*

The Kimptons seize upon the acknowledgement in *Maynard v. City of Madison,* 101 Wis. 2d 273, 304 N.W.2d 163 (Ct. App. 1981), that a city is not immune from suit in cases where its employees are negligent in carrying out established city policies. *Id.* at 283, 304 N.W.2d at 168–69. They argue, in essence, that the district had a "policy" against teachers sexually assaulting students and that its employees must have been negligent in carrying out that policy because Segerstrom was hired as a teacher and eventually was able to begin and carry on the relationship with James on school property. Specifically, they contend that the district was actionably negligent: (1) when it did not "attempt to find out about any criminal or homosexual behavior of Segerstrom before he was hired"; and (2) when it failed to investigate and inspect teachers' rooms during the year "to check for inappropriate activities," and otherwise direct its employees "to foster [the] policy" against teacher-student homosexual assaults.

No school board member would disagree with the proposition that teachers should not criminally assault their students. But this does not establish that the New Lisbon School District has adopted specific rules or policies prohibiting such conduct which were negligently implemented by its employees.

This is not a case like *Maynard,* where the policymaking arm of the city adopted specific policies to govern the release of confidential information by the police, and city employees were negligent in the manner in which they carried out those policies. The Kimptons' pleadings and affidavits do not reveal that the district failed to comply with any of its established policies or procedures. They simply suggest that the district did not have specific policies geared towards the detection and prevention of teacher-student homosexual assaults, any more than they had policies against the commission of murder, mayhem or other crimes against students. And the Kimptons agree that they may not sue the district for failing to promulgate such policies, for that is a quasi-legislative function.

What the Kimptons attempt to do in the negligence action is to bootstrap their damage lawsuit against Segerstrom into one against the school district and its insurer. Their complaint alleges no more than that the district was negligent in hiring and supervising Segerstrom, and those functions are no less discretionary—no less "quasi-judicial"—than decisions on whether to fire an employee, whether to convene an inquest or perform an autopsy, or whether to release a patient from a hospital. *See* cases cited *supra* note 4.

The trial court correctly ruled that the affidavits raised no material factual disputes and that, as a matter of law, the negligence claims are barred by sec. 893.80(4), Stats.

## II. *FEDERAL CLAIM*

A claim under 42 U.S.C. sec. 1983 (1982), is stated when a plaintiff alleges (1) that he or she has been

236

deprived of a federally protected right, and (2) that the person doing so acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). The act imposes liability on a governmental entity only when its policies or customs are "the moving force of the constitutional violation." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). Liability may not be premised on a theory of *respondeat superior. Id.* at 691. "At the very least there must be an affirmative link between the [governmental] policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle,* — U.S. —, —, 85 L. Ed. 2d 791, 804 (1985).

The Kimptons' complaint alleges that Segerstrom, a "servant" of the district acting under color of state and local law, deprived James of his constitutional right to privacy by the "intentional, wilful, [and] wanton" actions of sexually assaulting him. Far from pointing to a district policy or custom which deprived James of any constitutional rights, the pleadings aver that James's injuries were the result of Segerstrom's *intentional* acts—his violation of an unstated "policy" prohibiting teachers from sexually assaulting students. The unilateral acts of a nonpolicy-making employee may not be the basis for the district's liability under sec. 1983. *Tuttle,* — U.S. at —, 85 L. Ed. 2d at 808 (Brennan, J., concurring). Liability is imposed only where the district's policy or custom is the "moving force" behind a constitutional violation. *Monell,* 436 U.S. at 694.

Finding this portion of the complaint to be insufficient, the trial court looked to the Kimptons' fourth cause of action which incorporated the sec.

1983 allegations and stated further that the district was negligent in hiring, supervising, and training Segerstrom, and in inspecting and assigning classrooms. The court found these allegations to be inadequate, and we agree. A claim of negligence in hiring, training, and supervising employees does not state a cause of action under sec. 1983. *Lenard v. Argento,* 699 F.2d 874 (7th Cir.), *cert. denied,* 464 U.S. 815 (1983); *Starstead v. City of Superior,* 533 F. Supp. 1365 (W.D. Wis. 1982). For such a claim to be actionable under the federal act, the failure to supervise or the lack of training must be so severe that it shows "gross negligence" or "deliberate indifference."[5] *Lenard,* 699 F.2d at 885; *Starstead,* 533 F. Supp. at 1371.

The Kimptons argue that the trial court dismissed their sec. 1983 claim against the district on a "technicality"—simply because their pleadings did not include the specific phrases "deliberate indifference" and "gross negligence" in describing the district's conduct. They contend that had they been allowed to amend the pleadings to correct this "technical deficiency," they could have avoided dismissal. We disagree.

The trial court's ruling was not simply that the complaint lacked the "magic words," but that neither the pleadings nor the affidavits set forth facts suffi-

---

[5]We note that the Supreme Court has explicity left open the question of whether an allegation of "inadequate training" can ever meet the "policy" requirement of *Monell.* Assuming it does, the court has questioned whether "gross negligence" in establishing a training program could establish a "policy" which is a "moving force" behind unconstitutional conduct. *Tuttle,* — U.S. at —, 85 L. Ed. 2d at 804 n. 7. We need not address the question, however, because we affirm for other reasons.

cient to meet that burden. To rise to the level of "gross negligence" or "deliberate indifference" the evidence must show that the district's "supervisory officials knew or should have known that [the employee was] engaging in unconstitutional conduct, and they failed to take remedial action." *Starstead,* 533 F. Supp. at 1371 n. 5. The deposition testimony of employees, supervisors and school board members reveals that none of them were in any way aware of Segerstrom's relationship with James until Segerstrom was arrested.[6] Those facts are not disputed. James himself admitted that he took pains to conceal the relationship and told no one of it until December, 1983. There simply is no evidence that the district had any knowledge of the relationship.

Nor is there any evidence indicating that the district should have known of Segerstrom's activities,

[6]The Kimptons argue that we can infer knowledge on the part of the district because there is evidence that another teacher may have been aware of one instance of sexual activity between Segerstrom and James.

The depositions indicate that in 1981 a student observed Segerstrom and James together in a room in the school. She stated that she told her father, a New Lisbon high school teacher about the incident. Her father testified that all his daughter told him was that she "walked into the choir room one day and she saw ... [that] Segerstrom was seated and James was sitting on the floor and that ... is basically all she was ever sure of." He testified that he never told anyone in the school administration or any school board member about the incident.

The evidence is insufficient to support an inference of knowledge on the board's part where there is no indication the teacher told any supervisory officials or members of the school board about the incident.

239

or even the likelihood that they might occur. While school officials were aware that in the mid-1960's an unnamed male teacher was fired because of his sexual attraction to a male supervisor, this knowledge would not form any reasonable basis for the district to take preventative measures on the chance that Segerstrom might initiate a homosexual relationship with a student fifteen years later. Even so, the rule is that "[o]nly where there is a pattern of constitutionally offensive acts with failure to invoke remedial measures will there result in municipal liability [under sec. 1983] for subsequent violation 'if the supervisor's inaction amounts to deliberate indifference or tacit authorization of the offensive acts.'" *Lenard,* 699 F.2d at 886, quoting *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir. 1980). *See also Tuttle,* — U.S. at —, 85 L. Ed. 2d at 804.

The affidavits do suggest that school officials were aware of complaints about Segerstrom's disciplinary methods and that he previously had a drinking problem. But this knowledge alone would not reasonably indicate to the school board that Segerstrom was likely to engage in a homosexual relationship with a student. It is undisputed that the school officials knew nothing of Segerstrom's activities, nor is there any basis for believing they should have known of them. As a result, there is no evidence in the record which would support a finding of "gross negligence" or "deliberate indifference" on the district's part. On these undisputed facts, the trial court properly granted summary judgment to the district.

*By the Court.*—Judgment affirmed.