Renee KIMPS, Plaintiff-Respondent-Cross Appellant-Cross Respondent,†

NORTH CENTRAL HEALTH CARE PROTECTION PLAN, Nominal-Plaintiff,

v.

Dr. Leonard M. HILL, Defendant-Appellant-Cross Respondent,

JAYFRO CORPORATION, a Subsidiary of Verified Sports, Inc., Defendant-Respondent-Cross Respondent-Cross Appellant,†

Allen R. KURSEVSKI, Defendant-Cross Respondent,

Dr. John MUNSON, Marty Loy, Sister Rosella Reinwand, Jerry Burling, Milwaukee Sporting Goods, Pacific Employers Insurance Company, Allen R. Kursevski, Donald P. Burling, Gregory Diemer, Valley School Suppliers, a Division of QIII Corporation and INA Insurance Company, Defendants.

Court of Appeals

*No. 92–2736. Submitted on briefs January 6, 1994.—Decided September 15, 1994.*

(Also reported in 523 N.W.2d 281.)

†Petition to review filed.
†Petition to review filed.

SUNDBY, J., dissents.

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Robert D. Repasky*, assistant attorney general.

For the plaintiff-respondent-cross appellant-cross respondent, the cause was submitted on the briefs of *Keith F. Ellison* and *Paul E. David* of *Patterson, Richards, Hessert, Wendorff & Ellison* of Wausau.

For the defendant-respondent-cross respondent-cross appellant the cause was submitted on the briefs of *David A. Ray* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Stevens Point.

For the defendant-cross-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Robert D. Repasky*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   This is an appeal and cross-appeal from a judgment against Dr. Leonard M. Hill, a physical education professor at the University of Wisconsin-Stevens Point. The judgment arose out of a negligence action in which Renee Kimps asserted that her foot was injured when a volleyball standard fell on it. The issue is whether Professor Hill is entitled to the protection of public officer immunity. Kimps and Jayfro Corporation cross-appeal from the trial court's ruling that Allen Kursevski, a former safety officer at the university, was entitled to public officer immunity as to Kimps's claims. We conclude that both Hill and Kursevski are entitled to public officer immunity from Kimps's claims. Accordingly, we affirm in part and reverse in part.

511

## BACKGROUND

Professor Hill taught a class in physical education for future teachers. As part of the class, Kimps and other students taught groups of small children under Professor Hill's supervision. On October 20, 1988, Kimps and other students were preparing to teach the children how to play volleyball. Poles holding the nets were inserted in very heavy metal bases called "standards" which had been purchased from Jayfro in 1969. The poles were secured in the standards with screws, and the standards had wheels on them so they could be moved. Kimps's foot was injured when a standard separated from its pole as the apparatus was being pulled across the floor by another student.

In 1986, a similar accident had occurred when one of the standards separated from its pole, injuring a maintenance worker. The accident was investigated by Alan Kursevski, the university's safety officer at that time. As university procedures required, Kursevski filed an accident report. He also had a discussion with another university employee who suggested that a bolt be placed through both the standard and the pole, so that they would not separate. Kursevski concluded that this would create as much or more of a danger than it would solve, so he did not follow this suggestion.

At the close of Kimps's case, the State moved for dismissal as to Professor Hill and Kursevski because, it argued, both were entitled to public officer immunity. The court took the motion under advisement, and after the jury retired, granted the motion as to Kursevski and denied it as to Professor Hill. The jury allocated negligence as follows: Kimps—ten percent, Jayfro—ten percent, Kursevski—thirty-five percent and Hill—forty-five percent. Professor Hill appeals, Kimps and Jayfro cross-appeal.

## STANDARD OF REVIEW

Though we must sustain jury findings if they are supported by any credible evidence, *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305-06, 347 N.W.2d 595, 598 (1984), a determination of what is imposed by a ministerial duty is a question of law which we review *de novo. K.L. v. Hinickle*, 144 Wis. 2d 102, 109, 423 N.W.2d 528, 531 (1988). Whether a duty is ministerial or discretionary determines whether a public officer is entitled to immunity from suit. *Id.* at 107-08, 423 N.W.2d at 530. Section 893.80(4), STATS., grants immunity to public officers for their discretionary acts. "A public officer's duty is ministerial 'only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.' " *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 425, 474 N.W.2d 799, 801 (Ct. App. 1991) (quoting *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610, 622 (1976)).

*C.L. v. Olson*, 143 Wis. 2d 701, 717-18, 422 N.W.2d 614, 620 (1988), describes three exceptions to the rule of public officer immunity: (1) where the officer's duty is ministerial; (2) where "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion;" and (3) "where a public officer's challenged decision involves the exercise of discretion but the discretion exercised is not governmental, *i.e.*, does not require the application of statutes to facts nor a subjective evaluation of the law." The parties's arguments as to the issue of public officer immunity differ somewhat

513

as they pertain to Professor Hill and Kursevski. We will therefore examine this issue as to each defendant separately.

## PROFESSOR HILL

Kimps and Jayfro argue that Professor Hill failed to provide safe equipment and failed to instruct the students, and that both of these were ministerial duties. While we agree that Professor Hill could be found negligent for these failures, that is not the question before us. The doctrine of public officer immunity assumes that a public officer is negligent. The question before us is whether the officer is entitled to immunity.

After considering the exceptions to public officer immunity noted in *C.L.*, 143 Wis. 2d at 717-18, 422 N.W.2d at 620, we conclude that Professor Hill's duty was discretionary. All persons have a duty to conduct themselves in a manner that will not harm or endanger others. *Hertelendy v. Agway Ins. Co.*, 177 Wis. 2d 329, 334, 501 N.W.2d 903, 905 (Ct. App. 1993). But in public officer immunity cases, the question is whether that duty is ministerial or discretionary. There is no question but that Professor Hill's duty was discretionary. A professor is paid to teach, and should not be forced to spend his or her time checking nuts and bolts on classroom equipment. Professor Hill testified that he positioned himself near the trampoline rather than other sports activities because students had the most risk of injury on the trampoline. He did not inspect the volleyball set screws because he had many things to do on the day of the accident. Tightening bolts and conducting tests on sports equipment is not something that the law "imposes, prescribes and defines the time, mode and occasion for its performance with such cer-

tainty that nothing remains for the exercise of judgment or discretion." *C.L.*, 143 Wis. 2d at 717, 422 N.W.2d at 620. Kimps and Jayfro do not cite any statutes, rules, policies or orders requiring that volleyball base set screws be checked by anyone, let alone by Professor Hill.

Furthermore, Kimps and Jayfro do not directly argue that the loose set screws were a known present danger of such force that nothing remained for judgment. And there is no evidence that Professor Hill knew the screws were loose, or that loose set screws created the certainty of injury that would have required Professor Hill to act had he known of them. Thus, the second *C.L.* exception to the rule of public officer immunity is inapplicable.

Kimps and Jayfro both contend that the third *C.L.* exception applies here. They argue that the discretion not to check equipment is not governmental, and that under *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980), *Protic v. Castle Co.*, 132 Wis. 2d 364, 392 N.W.2d 119 (Ct. App. 1986), and *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985), some types of exercises of judgment or discretion are professional, not governmental, and are exceptions to the rule of qualified immunity.

But in *Stann v. Waukesha County*, 161 Wis. 2d 808, 468 N.W.2d 775 (Ct. App. 1991), we considered the effect of *Scarpaci, Protic* and *Gordon*. We concluded:

> First, the authorities upon which the Stanns rely for their "discretion but still not governmental discretion" argument are not applicable to the case at bar. Only three Wisconsin decisions have recognized such a distinction. However, each of these cases involved allegations of negligence regarding medical decisions. *These cases are restricted to their*

515

*facts, as no Wisconsin decision applies this exception
in any other setting.*

*Stann*, 161 Wis. 2d at 818, 468 N.W.2d at 779 (footnote
omitted) (emphasis added).

Kimps and Jayfro recognize this language from
*Stann,* but assert: "There is nothing in those cases
[*Scarpaci, Protic* and *Gordon*] which supports [limiting
their holding to medical decisions]." Yet this argument
leads to the conclusion that we should either ignore
*Stann* or overrule it. Section 752.41(2), STATS., pro-
vides: "Officially published opinions of the court of
appeals shall have statewide precedential effect." And,
in *Ranft v. Lyons*, 163 Wis. 2d 282, 299-300 n.7, 471
N.W.2d 254, 260-61 n.7 (Ct. App. 1991), we concluded
that even though we would decide an issue differently
were it a matter of first impression, we would follow
our prior published decision to the contrary. While we
may withdraw language from a prior opinion, *Kimpton
v. School Dist.*, 138 Wis. 2d 226, 234 n.4, 405 N.W.2d
740, 744 n.4 (Ct. App. 1987), or overrule a statement in
a prior opinion, *State v. Dunn*, 117 Wis. 2d 487, 492,
345 N.W.2d 69, 71, *aff'd*, 121 Wis. 2d 389, 359 N.W.2d
151 (1984), doing so is contrary to the rule of *stare
decisis*. In *Wyss v. Albee*, 183 Wis. 2d 245, 253, 515
N.W.2d 517, 520 (Ct. App. 1994), we explained that the
rule of *stare decisis* was a substantial disincentive to
change and that there is considerable judicial reluc-
tance to depart from that rule. We therefore declined to
overrule one of our recently decided cases. We see no
reason to depart from the rule of *stare decisis* here.

Next, Kimps and Jayfro argue that by referring to
*C.L.*, and discussing the analysis employed by the tril-
ogy of medical discretion cases when we decided

516

*Sheridan*, we held that the logic of those three cases was not limited to medical care cases, thus implicitly overruling our holding to the contrary in *Stann. Sheridan*, 164 Wis. 2d at 424-28, 474 N.W.2d at 801-03. We disagree. *C.L.* and the trilogy of medical cases are necessary parts of an analysis of public officer immunity. When we withdraw language from a prior opinion or overrule a statement in a prior opinion, we do so directly and not by implication. *See Kimpton*, 138 Wis. 2d at 234 n.4, 405 N.W.2d at 744 n.4, and *Dunn*, 117 Wis. 2d at 492, 345 N.W.2d at 71.

■■

Kimps and Jayfro ask us to consider the analyses that courts of other jurisdictions use in public officer immunity cases. However, the supreme court has warned against that approach:

> Because we are satisfied that the questions presented in the case at bar are resolved by well-established Wisconsin law regarding the doctrine of immunity, we find that examination of decisions from other jurisdictions regarding immunity is unnecessary. Moreover, we find, as did the court of appeals, that the analysis applied in other jurisdictions regarding immunity is unhelpful.

*C.L.*, 143 Wis. 2d at 718 n.10, 422 N.W.2d at 620 n.10 (citation omitted). Our analysis of Wisconsin law requires the conclusion that Professor Hill is entitled to the protection of public officer immunity. Consequently, Kimps's complaint against him should be dismissed.

## ALLEN KURSEVSKI

The jury found Kursevski negligent. Kimps and Jayfro have cross-appealed the trial court's determination that Allen Kursevski was entitled to the protection

517

of public officer immunity. Their theory is that Kursevski was a safety officer at the university prior to Kimps's accident during which time he investigated an incident in which a university employee was injured in an accident nearly identical to the one in which Kimps was injured. Kursevski's job description required him to establish and administer the risk management program. Kimps and Jayfro assert that Kursevski had a ministerial duty to advise the department chair of the previous incident, and that he did not do so. Additionally, they argue, Kursevski had a ministerial duty to advise the administrative and instructional units of the university on risk management procedures. And, Kimps contends, Kursevski had a ministerial duty to respond to a known danger. Kimps's final argument is that Kursevski had a ministerial duty to have bolts inserted through the sleeves of the volleyball standards because he had been ordered to do so by his superior.

Kimps cites *Scarpaci*, 96 Wis. 2d at 685, 292 N.W.2d at 826-27, as holding that we must examine only the particular act of negligence to determine public officer immunity:

> [I]t is the categorization of the specific act upon which liability is based and not the categorization of the general duties of the public officer which dictates whether or not the officer is immune from liability. . ..

We agree. We therefore will examine Kursevski's acts, which Kimps asserts were negligent, to determine whether Kursevski was entitled to immunity.

Kimps asserts that: "Mr. Kursevski negligently performed (omitted) a ministerial duty when he failed to follow through on a direct and express order from his superior." We agree that had Kursevski been ordered

by his supervisor to have bolts placed through the volleyball standards and poles, his duty to do so would have been ministerial. But Kimps's assertion distorts the record.

Kimps draws her conclusion from two letters, one written by Mary Riggs of the State Risk Management Department to Linda Bredeson of the Department of Justice. The letter reads, in pertinent part:

> As you can see, Gerry Burling checked into the claim very thoroughly and found out that there had previously been a problem with a volleyball standard (work comp claim filed) and that the campus was supposed to have fixed it and didn't.

The other letter was written from Gerald Burling to Mary Riggs, and reads, in pertinent part:

> Attached hereto is a copy of the [w]orker's [c]ompensation claim filed for a UWSP employee injured by a volleyball standard falling on his foot. It is my understanding that Al Kursevski was asked to have a work order issued and follow through to have a bolt inserted in the sleeve to avoid further accidents of this type. Obviously, this had not been done whereas we have had a second accident this year involving the standard.

These letters do not support Kimps's assertion that Kursevski had been ordered by his superior to have bolts placed through the sleeves and poles of the volleyball standards. The letters refer to no "order." The first letter does not single out Kursevski. It says that "the campus was supposed to have it fixed." Kimps does not explain how "the campus" really means "Mr. Kursevski." It does not. Merely because Riggs thought the standard was to be fixed, does not mean Kursevski was ordered to do so. The second letter notes that Kur-

519

sevski was "asked," not "ordered," to have a bolt inserted in the standard. It does not explain whether the person who asked Kursevski was the president of the university, Kursevski's immediate superior, a fellow worker, a student, or an ice cream vendor. This letter does not show an absolute, certain and imperative duty. And, as the record shows, the "order" Kimps describes as ministerial was in reality only a possible question from Larry Obiala, a person who had no authority over Kursevski, and who testified that he did not tell Kursevski to have the standards drilled.

Kimps also argues that Kursevski had a ministerial duty to tell someone of the previous accident involving the volleyball standards. She asserts that this duty stems from a sentence in Kursevski's job description, and an opinion of Gregory Diemer, Assistant Chancellor for Business Affairs at the university. We disagree.

Had Kursevski's job description included: "Tighten screws on volleyball standards every Tuesday at 8:30 a.m.," this would be the "absolute, certain and imperative" duty required by *Sheridan*, 164 Wis. 2d at 425, 474 N.W.2d at 801. But that is not included in the job description. The "duty" Kimps relies on is the job description's notation: "Advise the administrative and instructional units of the University on risk management procedures." A "risk management procedure" is a method of accomplishing risk management. It is not a directive to circulate accident reports to anybody. Even if it were, how the procedure is to be done is not in the job description, but left to Kursevski's discretion. The sentence in Kursevski's job description upon which Kimps relies does not "define[] the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.*

We next examine the testimony of Diemer. On adverse examination, he gave much information about the duties of a safety officer. But on direct examination, Diemer explained that while Kursevski was the safety officer, Diemer knew of no responsibilities or specific directive that Kursevski might have had in regard to delivering accident reports to any particular department head. Kursevski has retired since Kimps's accident. We find no inconsistency between Diemer's testimony on adverse examination and on direct examination. There is no question but that he was speaking of the safety officer's *present* duties when he testified on adverse examination, and of Kursevski's duties when he testified on direct examination. And there is no evidence that Diemer told Kursevski that he had *any* duty. An uncommunicated belief as to another's duty cannot create a duty for the person not told.

Kursevski testified: "My recommendations were on this report and that report was given back to the supervisors in that area or that department head." Kimps produced John Munson, the associate dean of the School of Health, Physical Education, Recreation and Athletics, who testified that he was not aware of the first injury involving the volleyball standards until Kimps's injury. Kimps also produced Marty Loy, an administrative specialist in the physical education department who also testified that he was not aware of the first accident. But Kimps did not determine who the "supervisors in the area" were and produce their testimony that Kursevski did not tell them of the first accident. Even had she done so, all she would have shown was Kursevski's negligence. We assume negligence when we consider public officer immunity. Merely because Kursevski testified that he gave the accident report to someone does not establish that "the

law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.*

Next, Kimps argues that Kursevski had a ministerial duty to act in response to a known danger. In *Cords v. Anderson*, 80 Wis. 2d 525, 541-42, 259 N.W.2d 672, 679-80 (1977), the court held that a park manager had a ministerial duty to warn the public that a trail people regularly used passed a few inches from an undercut which dropped into a ninety-foot gorge. This is a far cry from requiring Kursevski to warn users of the volleyball standards that the pole and base might separate, permitting the base to fall on someone's foot. And we have already explained that Kimps has not shown that Kursevski failed to do what he said he had done—notify the supervisors in the area. What Kursevski said that he did is an example of a discretionary, not a ministerial act. And discretionary acts are granted public officer immunity.

Kimps's final argument is that in *Gordon*, we recognized a principle of public officer immunity taken from the Federal Tort Claims Act: "The distinction generally made in the application of the discretionary function exemption is between those decisions which are made on a policy or planning level, as opposed to those made on an operational level." *Gordon*, 125 Wis. 2d at 68, 370 N.W.2d at 807 (quoting *Thompson v. United States*, 592 F.2d 1104, 1111 (9th Cir. 1979)). That may have been the rule in 1985, but in 1988 the supreme court held to the contrary. The analysis of public officer immunity used in other jurisdictions is unnecessary and unhelpful. *C.L.*, 143 Wis. 2d at 718 n.10, 422 N.W.2d at 620 n.10.

Jayfro also makes some of the same arguments made by Kimps, and we will not repeat our responses to

those arguments. Jayfro also relies upon other parts of Kursevski's job description for its conclusion that he had a ministerial duty to notify the head of the physical education department of the first volleyball standard accident. But those other parts of the job description are no more specific than the one we have discussed. They are:

H1. Work toward the goal of creating a hazard-free environment on the campus in order to safeguard the employes, students and visitors to the campus.

H2. React to hazards reported by the employes and students and periodically inspect all of the facilities.

H3. Investigate all incidents and take action to correct the condition or procedure that caused the accident. Incidents investigated include Worker's Compensation claims . . . .

H4. Conduct inspections of the classroom facilities to assure that the facilities and equipment are in good working order. Such items as . . . maintenance equipment, vehicles, gymnastics equipment in the Athletics Department . . . are inspected to prevent or reduce injuries.

All of these parts of Kursevski's job description are written in discretionary terms. None are absolute, certain and imperative, involving the performance of a specific task with a defined time, mode and occasion for its performance as required by *Sheridan*, 164 Wis. 2d at 425, 474 N.W.2d at 801.

We remind Jayfro, as we have reminded Kimps, that in cases such as this, the rule is immunity. *C.L.*, 143 Wis. 2d at 717, 422 N.W.2d at 620. Persons suing

public officers must find an exception to this rule. Most public officers have job descriptions, and most job descriptions are written in a general fashion, much as Kursevski's job description was written. Many accidents can be matched up, in a general way, with a public officer's job description. Were we to hold that a general job description creates a ministerial duty to do something to prevent all accidents, the "ministerial duty" exception would swallow the rule of immunity. We would in effect be overruling *C.L.* This we are not permitted to do. *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984). Therefore, we conclude that the trial court properly determined that Kursevski was entitled to public officer immunity.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

SUNDBY, J. (*dissenting*). "The King can do no wrong, but his ministers may." Hugh Douglas Price and J. Allen Smith, *Municipal Tort Liability: A Continuing Enigma*, 6 U. FLA. L. REV. 330, 334 (1953) (quoting *Ballard v. Tampa*, 168 So. 654, 657 (1936)). In our decision today, we hold that the King's ministers may do no wrong. By the majority's definition of what constitutes a "discretionary" act, it has effectively made the test for liability the defendant's status as a public officer and not whether his or her act was "discretionary."

The majority assumes that Professor Hill and the University Safety Officer, Allen Kursevski, were negligent in failing to provide the students with safe equipment. Maj. Op. at 513, 516–17. The jury found that they were negligent. The majority concludes, however, that both of these employees are immune from

liability because their failure to provide safe equipment resulted from discretionary decisions.

Professor Hill taught a class in physical education for future teachers. Under his supervision, students taught groups of small children. Renee Kimps, a student enrolled in one of Professor Hill's classes, was injured when a volleyball standard fell on her because the set screws gave way as the standard was being put in place. The majority concedes that Professor Hill had a "duty" but it does not tell us what that duty was. It says that his duty was "discretionary." Plainly, that means, at least in this case, that whatever Professor Hill's duty, he was free to exercise his discretion not to perform that duty. The majority concludes that: "A professor is paid to teach, and should not be forced to spend his or her time checking nuts and bolts on classroom equipment." Maj. Op. at 513. The majority further asserts that Professor Hill had no duty of care with respect to the volleyball class because he had positioned himself near the trampoline where the students had the greatest risk of injury. *Id.* The majority does not explain why Professor Hill, at some time, could not have made certain that all of the sports equipment used in his teaching was safe.

Hill's duty to protect students on the trampoline apparently arose at the same time Kimps was teaching children how to play volleyball. Professor Hill could not be in two places at one time. If one of the volleyball students had been struck by a volleyball and injured, Professor Hill could rightly defend on the grounds that his decision to teach other students how to use a trampoline was a discretionary act. However, that would not excuse him from performing his duty to see that the volleyball standards were secure. Kimps does not claim that Professor Hill should have been instructing the

525

class on how to play volleyball rather than on how to use a trampoline. She simply claims that he had a duty to see that the equipment used in *all* of his classes was safe for the students' use.

The defendants do not argue that Kimps's complaint failed to state a cause of action based on Professor Hill's negligence. In order to constitute a cause of action for negligence there must exist: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976).

*Coffey* is a valuable precedent in this case because the court discussed the question of duty in relation to a public officer's claim of immunity. In *Coffey*, the plaintiff alleged that the building inspector was negligent in performing building inspections. The court said that the building inspector and the city owed a duty to the plaintiffs to properly conduct the inspection of a building. *Id.* at 539-40, 247 N.W.2d at 139. The defendants argued that the city and the building inspector did not owe a duty to the individual plaintiff but to the public. The court said, however, "[a]ny duty owed to the public generally is a duty owed to individual members of the public." *Id.* at 540, 247 N.W.2d at 139. The majority concedes that Professor Hill owed a duty to see that the sports equipment used in teaching his students was safe for their use. That duty was not an abstract duty owed generally to a group of students but, under *Coffey*, was a duty owed to Kimps.

The *Coffey* court addressed whether governmental immunity prevented a judgment for damages against the city and the building inspector. The city and the building inspector argued that enforcement of the

building code was quasi-judicial in nature, and therefore they were immune from liability. The court said: "However, it is the categorization of the specific act upon which negligence is based and not the categorization of the overall general duties of a public officer which will dictate whether or not the provisions of sec. 895.43(3), Stats., [now § 893.80(4), STATS.] [provide immunity]." *Coffey*, 74 Wis. 2d at 533-34, 247 N.W.2d at 136. The majority's analysis is therefore flawed when it concentrates on Professor Hill's duty to teach rather than on his duty to make sure that the sports equipment used in his teaching was safe for the students' use. The latter duty was ministerial. Professor Hill's duty to insure that the sports equipment used in his classes was safe was imposed on him by his teaching obligation. I agree with the majority that Professor Hill was paid to teach, *but he was paid to teach physical education.* Plainly, that duty included insuring that the equipment provided to the students was safe for their use. He did not have to satisfy that duty by personal inspection of every piece of physical equipment; that was Kursevski's job. However, Professor Hill had a duty to see that the safety officer at the university had inspected and prepared the sports equipment for the students' use.

As to Kursevski's liability, his duty is even clearer than Professor Hill's. Kursevski's job description required him to establish and administer a risk management program. That duty is similar to the duty of the building inspector in *Coffey*. "Violations exist or do not exist according to the dictates of the regulations governing the inspection, and not according to the discretion of the inspector." *Id.* at 534, 247 N.W.2d at 136-37. Similarly, the University's risk management program required periodic inspection of equipment used in

527

teaching; that could not be performed at the whim of the risk manager.

The majority would find Kursevski subject to liability only if his job description had included: "Tighten screws on volleyball standards every Tuesday at 8:30 a.m." Maj. Op. at 519. If Kursevski's job description had read "[t]ighten screws on volleyball standards," the majority would find that his duty was not ministerial because it didn't specify the day and hour at which he was to perform that duty. The day and the hour are not relevant to Kursevski's performance of duties.

For the foregoing reasons, I respectfully dissent.