COURT OF APPEALS
DECISION
DATED AND FILED

January 15, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP255**

Cir. Ct. No. **2021CV599**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

MICHAEL BERKLEY AND CRAZYHORSE, LLC,

   PLAINTIFFS-APPELLANTS,

V.

CITY OF LA CROSSE, WISCONSIN MUNICIPAL MUTUAL
INSURANCE COMPANY, STATE OF WISCONSIN, AND
WISCONSIN DEPARTMENT OF TRANSPORTATION,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Affirmed.*

Before Graham, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Crazyhorse, LLC and its sole member, Michael Berkley (collectively "Crazyhorse"), appeal a circuit court order granting summary judgment in favor of the City of La Crosse and its insurer (collectively "the City") and the State of Wisconsin and Wisconsin Department of Transportation (collectively "DOT"). We conclude that Crazyhorse has not produced evidence of an actual physical occupation of its property as required for its inverse condemnation claims against the City and DOT. We also conclude that Crazyhorse's negligence and nuisance claims against the City are barred by governmental immunity. We therefore affirm.

## BACKGROUND

¶2 In 2010, Crazyhorse purchased a building located at the intersection of Cameron Avenue and 3rd Street ("the intersection") in the City of La Crosse. The intersection had been reconstructed years earlier, in 2004, in conjunction with the construction of the Cameron Avenue Bridge.

¶3 According to Crazyhorse, this project made the intersection dangerous and, between 2010 and 2021, caused approximately 8-12 instances of vehicles colliding with its building. Two of the crashes—one in 2020 and one in 2021—resulted in damage to Crazyhorse's building that required repairs. The City ordered the building to be razed in early 2021, noting that it had "been damaged by vehicle strikes multiple times and ha[d] suffered significant exterior damage" and that it had become dilapidated and dangerous as a result of not being properly maintained.

¶4 In December 2021, Crazyhorse filed a lawsuit asserting various claims against the City and DOT based on the allegations that their redesign and reconfiguration of the intersection caused vehicles to crash into and damage its building. After the circuit court granted the defendants' motions to dismiss in part,

the following claims remained: inverse condemnation against both the City and DOT under WIS. STAT. § 32.10 and WIS. CONST. art. I, § 13, negligence against the City, and nuisance against the City.

¶5     After discovery, both the City and DOT moved for summary judgment.  The circuit court granted the motions, determining that Crazyhorse had failed to produce evidence that there was any increase in accidents that was caused by the 2004 redesign and reconfiguration of the intersection.  Crazyhorse appeals.

## DISCUSSION

¶6     We review a circuit court order granting summary judgment independently, using the same methodology as the circuit court.  *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294. If the moving party establishes a prima facie case for summary judgment, such as a defense that would defeat the claim against it, we examine the other party's evidence to determine whether any material facts are in dispute.  *Kimpton v. School Dist. of New Lisbon*, 138 Wis. 2d 226, 230-31, 405 N.W.2d 740 (Ct. App. 1987).  If there are no material factual disputes and the moving party is entitled to a judgment as a matter of law, we affirm.  *See* WIS. STAT. § 802.08(2).

### I.  Inverse Condemnation

¶7     We begin with Crazyhorse's inverse condemnation claims.  Article I, Section 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation therefor."  Sometimes, the government does not formally exercise its power of condemnation to acquire property for public use, but it effectively "takes" the property by regulation or by another action.  *See Brenner v. New Richmond Reg'l Airport Comm'n*, 2012 WI

98, ¶41, 343 Wis. 2d 320, 816 N.W.2d 291. This concept is referred to as "inverse condemnation," and a property owner may file a claim to obtain just compensation for this type of inverse condemnation pursuant to WIS. STAT. § 32.10. *See Brenner*, 343 Wis. 2d 320, ¶42.

¶8 To succeed on an inverse condemnation claim, a property owner must establish that there is a "'taking' of private property for public use," be it either a "regulatory taking" by an onerous regulation or an "actual physical occupation" of the property. *Id.*, ¶¶42-43; *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, ¶22, 326 Wis. 2d 82, 785 N.W.2d 409. Whether government conduct constitutes a taking is a question of law that we review de novo. *E-L Enters.*, 326 Wis. 2d 82, ¶20.

¶9 Here, Crazyhorse does not claim a regulatory taking or that the City's order to raze the building constitutes a taking. Instead, it argues that the defendants' "actions constituted an actual physical occupation of [its] property"—more specifically, that "periodic physical invasions by vehicles causing physical damage" constituted the physical occupation of its property. We conclude, as a matter of law, that the facts alleged by Crazyhorse do not constitute the requisite taking for an inverse condemnation claim against either defendant.

¶10 Crazyhorse's argument is analogous to the one rejected by our supreme court in *E-L Enterprises*. In that case, a governmental entity extracted groundwater from an area adjacent to E-L Enterprises' building in order to construct a sewer. *E-L Enters.*, 326 Wis. 2d 82, ¶¶7-9. The removal of groundwater damaged the wood piles upon which E-L Enterprises' building was constructed and caused the building's foundation to crack. *Id.* E-L Enterprises sought compensation in an inverse condemnation claim—not for the value of the groundwater that had been

extracted from its property, but for the cost of repairing the wood piles and its building. *Id.*, ¶28. Our supreme court determined that E-L Enterprises was not entitled to compensation, concluding that the government "did not physically occupy the property" for which E-L Enterprises sought compensation; it "did not use the building or wood piles in connection with the sewer installation, and the public obtained no benefit from the damaged building or wood piles." *Id.*, ¶¶5, 33. Thus, E-L Enterprises showed "only damage, without appropriation to the public purpose," and the court applied the well-settled law that "mere consequential damage to property resulting from governmental action" is not recoverable in a takings claim. *Id.*, ¶¶5, 33.

¶11 As in *E-L Enterprises*, Crazyhorse seeks compensation for a "government action outside [its] property" (that is, the redesign of the intersection) that allegedly caused "consequential damages within" the property. *See id.*, ¶30 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). Neither the City nor DOT used Crazyhorse's building in connection with the road and bridge construction project, nor has the public obtained a benefit from the damaged building or any vehicles colliding with it. If Crazyhorse were able to prove that the project caused the collisions, it would establish no more than that the government action caused consequential damage to its property, which, as we have explained, is not recoverable through an inverse condemnation action.

¶12 Crazyhorse argues that its claim is analogous not to the claim in *E-L Enterprises* but to the one asserted in *Brenner*. That case was an airplane overflight case in which our supreme court determined that government action that resulted in airplanes flying over a landowner's property "low enough and with sufficient frequency to have a direct and immediate effect on the use and enjoyment of the property" could constitute a taking. *Brenner*, 343 Wis. 2d 320, ¶4. Crazyhorse

asserts that "periodic physical invasions by vehicles causing physical damage" to its property are like the periodic overflights in the *Brenner* property owners' airspace. Although this argument may have surface appeal, a closer look shows that *Brenner* is not analogous.

¶13     The holding in *Brenner* is based on the property interest that property owners have in the "block of airspace" that is "superadjacent" to their land. *Id.*, ¶¶63, 64. If overflights frequently invade a property owner's block of airspace, the owner may be able to assert that compensation is required because the government has effectively taken an easement through the property owner's block of airspace. *Id.*, ¶64. But damages "emanating from government-authorized action outside that block of air" are not compensable, "even though the consequences" for property owners' quiet enjoyment of their property "may be identical." *See id.*, ¶66.

¶14     As applied here, there is no argument that the City or DOT effectively took an easement through Crazyhorse's building. The circumstances of this case are not amenable to the analysis appropriately conducted in an overflight case.

¶15     Because we conclude that the facts alleged by Crazyhorse cannot constitute a taking as a matter of law, we affirm the circuit court's grant of summary judgment to the City and DOT on the inverse condemnation claims.

## II.  Nuisance and Negligence

¶16     We turn to Crazyhorse's remaining claims, which are asserted only against the City. Crazyhorse asserts that it suffered damages due to the City's negligence in designing and constructing the intersection and the nuisance resulting from the project. The City argues that these claims are barred by governmental immunity under WIS. STAT. § 893.80(4). The interpretation of a statute and its

application to undisputed facts is a question of law that we review de novo. *Xerox Corp. v. DOR*, 2009 WI App 113, ¶46, 321 Wis. 2d 181, 772 N.W.2d 677.

¶17    WISCONSIN STAT. § 893.80(4) provides that no suit may be brought against a governmental subdivision for "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."  Our case law provides that the terms "quasi-judicial" and "quasi-legislative" are synonymous with "discretionary." *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 425, 474 N.W.2d 799 (Ct. App. 1991) (citation omitted); *Kimpton*, 138 Wis. 2d at 235.  It is "well settled that 'acts of designing, planning, and implementing are legislative or quasi-legislative acts subject to immunity.'" *Melchert v. Pro Elec. Contractors*, 2017 WI 30, ¶22, 374 Wis. 2d 439, 892 N.W.2d 710 (citation omitted).  In *Melchert*, our supreme court explained that discretionary design decisions, including the placement of traffic signals on roads, placement of manholes in a sewer system, selection and placement of pipes, methods of excavation, and locations and methods of augering, were not to be "second guess[ed]" by the courts, nor were judges or juries to find government entities liable for negligence in making these decisions. *Id.*, ¶¶22-29.

¶18    In this case, to the extent the City made decisions regarding the "design and construction of the 3rd Street and Cameron Avenue project/road design and construction," those decisions are clearly the same sort of discretionary design decisions listed in *Melchert* that are entitled to immunity.  *See id.*; *see also, e.g.*, *Dusek v. Pierce County*, 42 Wis. 2d 498, 506, 167 N.W.2d 246 (1969) ("[W]hether or not to place a stop sign, a warning sign, or a yield sign … is a legislative decision that must be undertaken by the county board and not by the courts.").  Even if Crazyhorse could prove that the design of the intersection was responsible for the

collisions that damaged its building, its claims of negligence and nuisance are subject to governmental immunity pursuant to WIS. STAT. § 893.80(4).

¶19    Crazyhorse argues that the exceptions for ministerial duties imposed by law and known and compelling dangers apply to abrogate governmental immunity in this case. We disagree.

¶20    Beginning with ministerial duties, "[i]f liability is premised upon the negligent performance … of a ministerial duty imposed by law or government policy, then immunity will not apply." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶26, 253 Wis. 2d 323, 646 N.W.2d 314. Crazyhorse cites *Umansky v. ABC Ins. Co.*, 2009 WI 82, ¶1, 319 Wis. 2d 622, 769 N.W.2d 1, a case in which our supreme court determined that an OSHA mandate to erect a safety railing around any "platform 4 feet or more above adjacent floor or ground level" gave rise to a purely ministerial duty such that a state employee who failed to install a railing was not entitled to immunity. Crazyhorse argues that a DOT regulation providing that when roads are improved, they "shall be designed to safely accommodate vehicles traveling at the design speed selected for the road improvement" creates a similar ministerial duty.[1] *See* WIS. ADMIN. CODE § Trans 204.03(2). Unlike the OSHA mandate in *Umansky*, the administrative code that Crazyhorse cites does not "prescribe[] and define[] the time, mode and occasion for … performance with such certainty that nothing remains for judgment or discretion." *See Umansky*, 319 Wis. 2d 622, ¶¶15-18. Instead, it leaves the design of an improved road entirely to

---

[1] Crazyhorse also points to WIS. STAT. § 66.1035, which the City rightly points out has no bearing on this action as there are no allegations that the City "close[d] up, use[d], or obstruct[ed] any part of the … street … so as to damage abutting property."

the discretion of the City and does not trigger a purely ministerial duty such that derogation of that duty might be actionable despite WIS. STAT. § 893.80(4).

¶21 Nor does Crazyhorse establish that the intersection presented a "known and compelling" danger that could give rise to a ministerial duty that might bar immunity. *See Lodl*, 253 Wis. 2d 323, ¶4 ("The 'known danger' exception to municipal and public officer immunity under WIS. STAT. § 893.80(4) … arises only when there exists a danger that is known and compelling enough to give rise to a ministerial duty on the part of a municipality or its officers."). This exception to immunity applies only when "the danger is so severe and immediate that a specific and immediate response is required." *Umansky*, 319 Wis. 2d 622, ¶14 n.7 (citation omitted). Crazyhorse has not provided any evidence of that level of danger here.

¶22 Accordingly, we agree with the circuit court's conclusion that Crazyhorse's nuisance and negligence claims against the City are barred by discretionary immunity.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm the circuit court order granting summary judgment in favor of the City and DOT.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9