Donald W. HILTPOLD, Plaintiff-Respondent,

v.

T-SHIRTS PLUS, INC., and Kenneth Johnson, Defendants-Appellants.†

Court of Appeals

*No. 79–1878. Submitted on briefs August 11, 1980.— Decided September 15, 1980.*
(Also reported in 298 N.W.2d 217.)

† Petition to review denied.

712

■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■ ■■■■■

For the defendants-appellants the cause was submitted on the briefs of *Richard S. Marcus* and *Godfrey & Kahn, S.C.,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Burton Strnad* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J. On November 23, 1979, summary judgment was entered in favor of Donald W. Hiltpold (Hiltpold) against T-Shirts Plus, Inc. (T-Shirts), a foreign corporation, and Kenneth Johnson (Johnson), as chief executive officer of T-Shirts. The trial court granted Hiltpold rescission of a franchise agreement pursuant to sec. 553.51, Stats., and awarded Hiltpold $28,096.40 plus interest and costs, for which T-Shirts and Johnson were jointly and severally liable. T-Shirts and Johnson appeal that judgment. T-Shirts and Johnson also appeal an

order entered on January 2, 1980, dismissing their counterclaim against Hiltpold. We affirm both the judgment and the order of the trial court.

In May of 1977, Hiltpold purchased from T-Shirts a franchise to operate a retail T-Shirts shop in the Northridge shopping center, Milwaukee, Wisconsin. About a year later, Hiltpold purchased another T-Shirts franchise to operate a shop in the Capitol Court shopping center, Milwaukee, Wisconsin. Hiltpold paid $6,500 for the Northridge franchise and $8,500 for the Capitol Court franchise.

The franchise agreements required Hiltpold to pay T-Shirts five percent of the shops' gross receipts as weekly franchise fees. Pursuant to this requirement Hiltpold paid T-Shirts $11,096.40 in franchise fees for the two shops. Although Hiltpold paid the initial franchise fees and weekly franchise fees to T-Shirts, the written franchise agreement which set up these requirements was never actually signed by Hiltpold.

T-Shirts never registered the offer of sale of the franchise with the Wisconsin Commissioner of Securities as required by Wisconsin's Franchise Investment Law.[1] This failure of T-Shirts to register entitled Hiltpold to have the franchise rescinded[2] and to be financially restored to his presale position.[3] On August 8, 1979, Hiltpold commenced a rescission action.[4] As principal execu-

---

[1] Sec. 553.21(1), Stats. provides:

Registration requirement

(1) No person may sell or offer any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted under s. 553.22, 553.23 or 553.25.

[2] Sec. 553.51(1), Stats.

[3] *See Seidling v. Unichem, Inc.*, 52 Wis.2d 552, 557–58, 191 N.W. 2d 205, 208–09 (1971).

[4] Under sec. 553.51(4), Stats., such an action must be brought within three years of the sale. This requirement was satisfied here.

tive officer of T-Shirts, Johnson is jointly and severally liable for an award in Hiltpold's favor.[5]

At about the time this lawsuit was commenced, Hiltpold removed the T-Shirts signs from his shops at a cost of $2,000.

The trial court granted Hiltpold's motion for summary judgment in the amount of $28,096.40 ($6,500 initial franchise fee for the Northridge shop plus $8,500 initial franchise fee for the Capitol Court shop plus $11,096.40 total weekly franchise fees paid plus $2,000 for signs) plus interest.

On this appeal T-Shirts and Johnson contend that in arriving at the judgment amount, the trial court wrongly refused to take into account benefits allegedly conferred upon Hiltpold. These alleged benefits were:

a. Use of T-Shirts Plus, Inc.'s copyrighted trademark and logos;
b. Professional training;
c. Merchandising and operational consultation;
d. Trade secrets;
e. Fixtures and merchandise; and,
f. The right to buy merchandise of a particular quality at a substantial discount.

T-Shirts and Johnson also claim that the trial court erroneously dismissed by an order for summary judgment their counterclaims against Hiltpold for violations of the franchise agreement.

Summary judgment is not appropriate where there are material issues of fact or where different inferences may be drawn from the facts.[6] If there are no genuine issues of material fact, summary judgment may be grant-

---

[5] Sec. 553.51(3), Stats.

[6] *Krezinski v. Hay*, 77 Wis.2d 569, 572, 253 N.W.2d 522, 524 (1977).

ed if the law is clear.[7] When a summary judgment is appealed, this court must independently determine whether there are material issues of fact in dispute[8] to see if the trial court clearly abused its discretion.[9]

There is no question that Johnson is the chief executive officer of T-Shirts and that T-Shirts did not meet the filing requirements of the Wisconsin Franchise Investment Law, ch. 553, Stats. There is no question that Hiltpold is entitled to rescission of the sale and reimbursement from T-Shirts and Johnson, jointly and severally. It is undisputed that Hiltpold paid $15,000 in initial franchise fees for the two shops and $11,096.40 in weekly franchise fees. It is also undisputed that the cost of changing signs was $2,000. T-Shirts and Johnson claim there are material issues of fact as to the amount of Hiltpold's damages and that the trial court erred in not reducing Hiltpold's award by the financial benefits he reaped as a result of T-Shirt's expertise in marketing.

This court determines that a franchisor who illegally sells or offers to sell a franchise in this state has no right to have the liability assessed against it for its illegal activities reduced because of claimed "benefits conferred" upon the franchisee. This result is consistent with Wisconsin law concerning illegal contracts.

A contract is illegal where its formation or performance is expressly forbidden by a civil or criminal statute or where a penalty is imposed for doing the act agreed

[7] Sec. 802.08(2), Stats; *Taterka v. Ford Motor Co.*, 86 Wis.2d 140, 144, 271 N.W.2d 653, 654 (1978).

[8] *Wright v. Hasley*, 86 Wis.2d 572, 578–79, 273 N.W.2d 319, 322–23 (1979).

[9] *Jones v. Sears Roebuck & Co.*, 80 Wis.2d 321, 325, 259 N.W.2d 70, 71 (1977).

upon.[10] Such a contract is void and courts will leave the parties where they find them.[11] However, a party not in *pari delicto* may have restitution of benefits conferred under an illegal contract.[12]

Violation of the Wisconsin Franchise Investment Law provides not only civil liability but criminal penalties as well.[13] The sales of the franchises to Hiltpold were therefore illegal. Only Hiltpold was a party not in *pari delicto*.

The record shows that T-Shirts and Johnson knew they were in violation of the registration requirement of the Wisconsin Franchise Investment Law as of June 27, 1977, about one month after the Northridge franchise sale and almost ten months before the Capitol Court franchise sale. They were also aware of the criminal penalties involved in the registration violation as of April 24, 1978, when they received a letter from the Wisconsin securities commissioner. Although such knowledge is relevant to the imposition of criminal liability, it is not necessary to establish civil liability to the franchisee.

Given the illegality of both franchise sales, the law will not permit T-Shirts and Johnson to benefit from their wrong by allowing a reduction of their liability for "benefits conferred." Neither can T-Shirts and Johnson be allowed to assert a counterclaim under an illegal, unsigned and void franchise agreement.

*By the Court.*—Judgment and order affirmed.

[10] *Kryl v. Frank Holton & Co.*, 217 Wis. 628, 630, 259 N.W. 828, 829 (1935).

[11] *Id.* at 631, 259 N.W. at 829.

[12] *General Split Corp. v. P & V Atlas Corp.*, 91 Wis.2d 119, 125, 280 N.W.2d 765, 769 (1979).

[13] Secs. 553.51 and 553.52, Stats.