**STERLING VISION DKM, INC., Plaintiff,**

v.

**June GORDON, Defendant,**

v.

**STERLING VISION DKM, INC., D & K Optical, Inc., and Larry Joel, Counterclaim Defendants.**

No. 96–C–995.

United States District Court, E.D. Wisconsin.

Sept. 2, 1997.

---

Lawrence R. Commers, Mackall, Crounse & Moore, Minneapolis, MN, for June Gordon.

Ralph A. Weber, Kravit, Gass & Weber, Milwaukee, WI, for D & K Optical, Inc. and Larry Joel.

CURRAN, District Judge.

### DECISION AND ORDER

On August 30, 1996, Plaintiff Sterling Vision DKM, Inc., a Delaware corporation with its principal place of business in East Meadow, New York, commenced this action against June Gordon, the owner and operator of a Kindy Optical franchise in Sturgeon Bay, Wisconsin.[1] In 1993, Gordon had entered into a franchise agreement with Counterclaim Defendant, D & K Optical, Inc. Co–Counterclaim Defendant Larry Joel is D & K's former president. Gordon paid a $5,000 franchise fee and executed a note in the amount of $95,000 and a security agreement to D & K to finance her acquisition of equipment, furniture, fixtures, and other items from the franchisor.

In 1994, D & K and its related companies, Duling Entities, sought financing from Norwest Investment Services. To secure payment of the money loaned by Norwest, Duling assigned all of its assets and existing franchise agreements, including Gordon's franchise agreement and supporting documents, to Norwest. After Duling defaulted

---

1. This court has diversity jurisdiction over the subject matter of this action in that the parties are citizens of different states and the amount in controversy exceeds $50,000—the jurisdictional amount required under the former version of 28 U.S.C. § 1332 which was in effect when this case was filed.

on its obligations to Norwest, Norwest took possession of the Duling collateral and, on May 30, 1996, Norwest sold Duling's assets, including the Gordon franchise agreement and supporting documents, to Plaintiff Sterling Vision DKM. On that same day, Sterling purchased the assets of D & K and Norwest endorsed and delivered all D & K's franchise notes to Sterling.

Meanwhile, after August of 1995, Gordon stopped paying the royalties (seven percent of the store's monthly gross revenues) due under her franchise agreement. Gordon continued to make loan payments under the note to Norwest up to and including May 1996. On June 25, 1996, Gordon sent Sterling a notice of recission and material breach. Sterling responded by demanding immediate payment of the unpaid balance of the note. Thirty-five days later, Sterling filed the action now before this court.

Sterling seeks money damages from Gordon for breach of the franchise agreement and for Gordon's failure to make payment on the note. The Plaintiff also seeks a declaratory judgment that it is not liable for any liabilities Duling incurred prior to the asset sale and a declaratory judgment that the franchise agreement with Gordon remains in effect.

Gordon, in turn, has denied liability and has filed a counterclaim against Sterling, D & K Optical and Larry Joel. She seeks recission of the franchise agreement and supporting documents, plus money damages, for breach of contract and a judgment declaring that the note and security agreement are null, void and unenforceable.

The parties have filed cross motions for partial summary judgment.[2] These motions are now fully briefed.

### I. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

■ Merely because all the parties in a case move for summary judgment does not mean that any party must prevail. *See Home Insurance Company v. Aetna Casualty & Surety Company,* 528 F.2d 1388, 1390 (2nd Cir.1976)(*per curiam* ). If no party

demonstrates that summary judgment in its favor is warranted, no motion will be granted. *See e.g., Schwabenbauer v. Board of Education,* 667 F.2d 305, 313–14 (2nd Cir. 1981). The court must consider each party's motion separately and decide whether that party is entitled to judgment as a matter of law.

Under Federal Rule of Civil Procedure 56(c), a trial judge must grant summary judgment if the evidence offered demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party initially must inform the court of the basis for its motion and identify "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that the movant believes demonstrates the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 333, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 56(c)); *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970).

When, as with some issues in this case, the moving party bears the ultimate burden of proof on an issue upon which it seeks summary judgment, it has met its burden by showing sufficient evidence to justify a jury verdict in its favor. In contrast, when the moving party does not bear the ultimate burden of proof on an issue, it has met its burden by indicating that the nonmoving party has failed to adduce sufficient evidence to raise a genuine issue of material fact about the issue. *See Catrett,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53.

A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511. "As to materiality, the substantive law will identify which facts are material. Only

---

**2.** Although Gordon has not titled her motion as a motion for *partial* summary judgment, the arguments set forth in her briefs would not be dispositive of all the issues of liability, remedies and damages raised in this case.

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

Once a movant meets its initial burden, thereby establishing a *prima facie* case for summary judgment, the opponent of the motion must adduce enough evidence to support a jury verdict in its favor. *See Id.* at 249, 106 S.Ct. at 2510. The nonmovant cannot rest upon the allegations in its pleading, but must set forth specific facts showing that there is a genuine issue for trial *See First National Bank of Cicero v. Lewco Securities Corporation,* 860 F.2d 1407, 1411 (7th Cir.1988).

In assessing whether there are any factual issues to be tried, a court must view the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. See *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) *(per curiam ).* This assessment implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case such as this, the record must show that the trier of fact could find by a preponderance of the evidence (or, on some issues, by clear and convincing evidence) that the movant is entitled to judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512. If the nonmovant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

Guided by these standards, the court will now proceed to determine whether the movants are entitled to judgment under the applicable law. In this diversity case, the applicable law is the substantive law of the forum state, Wisconsin.

## II. *DISCUSSION AND DECISION*

### A. RESCISSION

█ It is undisputed that in June of 1996, June Gordon sent Sterling a notice of rescission of her franchise agreement. In moving for summary judgment, Gordon argues that she is entitled to rescission under that version of the Wisconsin Franchise Law (WFIL) which was in effect when she entered into the franchise agreement in 1993. In 1993, the relevant statute provided that:

> Any person who offers, purchases or sells a franchise in violation of s. 553.21 ... shall be liable to the franchisee or subfranchisor, who may bring an action for rescission. . . .

Wis. Stat. § 553.51(1)(1993). Section 553.21(1)(1993) of the Wisconsin Statutes provided, in pertinent part, that "[n]o person may sell or offer in this state any franchise unless the offer of the franchise has been registered under this chapter. . . ." Counterdefendants D & K and Larry Joel admit that at the time the franchise was sold to Gordon in 1993, D & K had not filed a registration statement with the State of Wisconsin.

The 1993 version of the WFIL also provided that:

> No franchise subject to registration under this chapter may be sold in this state unless a copy of the offering circular in the form prescribed by rule of the commissioner is provided to the prospective franchisee at least 10 business days prior to the execution by the prospective franchise of any binding franchise or other agreement or at least 10 business days prior to the receipt of any consideration, whichever first occurs.

Wis. Stat. § 553.27(4)(1993). It is undisputed that D & K did not provide Gordon with an offering circular prior to the execution of the franchise agreement or prior to the receipt of any consideration. Gordon reasons that, because she was sold a franchise without first being given the mandatory Uniform Franchise Offering Circular required by the statute, the sale was illegal and, therefore, void and that she should be entitled to restitution. *See Kryl v. Frank Holton & Company,* 217 Wis. 628, 630, 259 N.W. 828, 829 (1935).

The Wisconsin Franchise Investment Law was amended in 1996, to provide that a franchisee may seek rescission only if the franchisor's failure to register was a material factor in the franchisee's decision to purchase the franchise. The Plaintiff and Counterclaim Defendants D & K and Larry Joel

argue that the amended version of the WFIL should govern because that was the law in effect at the time Gordon attempted to rescind the franchise agreement. However, Gordon maintains that, under a Wisconsin law of statutory construction, the 1993 version of the law applies to her rescission action. She points out that section 990.04 of the Wisconsin Statutes provides that:

**Actions pending not defeated by repeal of statute.** The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute. And criminal prosecutions and actions at law or in equity founded upon such repealed statute, whether instituted before or after the repeal thereof, shall not be defeated or impaired by such repeal but shall, notwithstanding such repeal, proceed to judgment in the same manner and to the like purpose and effect as if the repealed statute continued in full force to the time of final judgment thereon, unless the offenses, penalties, forfeitures or rights of action on which such prosecutions or actions shall be founded shall be specially and expressly remitted, abrogated or done away with by such repealing statute.

Wis. Stat. § 990.04.

Gordon's claim for rescission accrued in 1993, when D & K sold her a franchise without filing a registration statement with the State of Wisconsin. Therefore, the 1993 version of the WFIL applies to her rescission claim. The 1993 version of section 553.51(1) renders an unregistered franchise offer or sale illegal and void as a matter of law. *See Hiltpold v.T-Shirts Plus, Inc.*, 98 Wis.2d 711, 716–17, 298 N.W.2d 217, 220 (Ct.App.1980).

Consequently, Gordon is entitled to rescind the franchise agreement.

■ Under the Wisconsin law applicable at the time Gordon entered into her franchise agreement, Gordon is entitled to be made whole. In *Hiltpold v.T-Shirts Plus, Inc.*, 98 Wis.2d 711, 298 N.W.2d 217 (Ct.App.1980), the Wisconsin Court of Appeals ruled that:

This court determines that a franchisor who illegally sells or offers to sell a franchise in this state has no right to have the liability assessed against it for its illegal activities reduced because of claimed "benefits conferred" upon the franchisee. This result is consistent with Wisconsin law concerning illegal contracts.

A contract is illegal where its formation or performance is expressly forbidden by a civil or criminal statute or where a penalty is imposed for doing the act agreed upon. Such a contract is void and courts will leave the parties where they find them. However, a party not in pari delicto may have restitution of benefits conferred under an illegal contract.

*Id.* at 716–17, 298 N.W.2d at 220 (footnotes omitted). Thus, D & K, as the original franchisor, must restore Gordon to her pre-franchise position. And, as Gordon points out, Larry Joel, as president of D & K in 1993, is jointly and severally liable by operation of the 1993 version of that section of the WFIL which provided that:

Every person who directly or indirectly controls a person liable under sub(1) or (2) . . . every principal executive officer or director of a corporation so liable, [and] every person occupying a similar status or performing similar functions . . . is also liable jointly and severally with and to the same extent as such person. . . .

Wis. Stat. § 553.51(3)(1993).

Joel concedes that both the 1993 and 1996 versions of the WFIL establish joint and several liability of franchisor officers, but only "unless the person who would otherwise be liable hereunder had no knowledge of or reasonable grounds to believe in the existence of facts by reason of which the liability is alleged to exist." Wis. Stat. § 553.51. Joel contends that Gordon cannot prove that he

knew of the registration requirement. Section 553.51, however, speaks of "facts" not known by the officer, not ignorance of the law. The officer is presumed to know the law of the state in which he sells franchises. Thus, this provision does not save Joel from joint and several liability for any restitution award to Gordon. *See Hiltpold v. T–Shirts Plus,* 98 Wis.2d at 716, 298 N.W.2d at 219.

## B. STATUTE OF LIMITATIONS

█ As an affirmative defense, Sterling, D & K and Joel argue that Gordon's rescission action is barred by the applicable statute of limitation. Section 553.51(4) of the Wisconsin Statutes applies to both the 1993 and 1996 versions of the WFIL and provides that:

> No action may be maintained against any person to enforce any liability under this section unless it is brought before the expiration of three (3) years after the act or transaction constituting the violation upon which the liability is based or ninety days after delivery to the franchisee of a written notice from or on behalf of that person that discloses any violation [.]

Wis. Stat. 553.51(4).

The record reflects that Gordon filed her counterclaim for rescission in this court on November 11, 1996. In opposing Gordon's motion for summary judgment, the Counterclaim Defendants contend that her claim accrued no later than November 1, 1993, and that her counterclaim was filed three years and eleven days later—too late to come within the limitation period prescribed by subsection 553.51(4).

The Counterclaim Defendants set forth a number of reasons why November 1, 1993,[3] should be the date the statute of limitation started running. According to their scenario:

> There is no dispute that, on October 19, 1993, Gordon submitted her resignation as manager of the Store, to take effect on November 1, 1993 with the transition of the Store to a franchise. She paid an initial franchise fee of $5,000 to D & K on October 25, 1993, and an additional $100

for a filing fee on October 28, 1993. She made her first rent payment on November 1, 1993. Gordon began operating the Store as a franchisee as of November 1, 1993. She purchased store assets effective November 1, 1993. She gave the Note for this purchase dated November 1, 1993. The security agreement for the Note was effective November 1, 1993. The corresponding "Loan Agreement" relating to the Note and Security Agreement provided that its closing date was November 1, 1993. Moreover, Gordon testified in her deposition that she understood that the franchise was purchased as of November 1, 1993 and that she started as a franchisee on November 1, 1993. The closing statement attached to the Franchise Agreement provides that the closing date and the effective date for the Franchise Agreement was November 1, 1993.

Memorandum in Support of Motion by Plaintiff Sterling Vision DKM for Partial Summary Judgment at 18–19 (citations and footnote omitted).

Despite the events occurring in November of 1993, undisputed documents and testimony in the record supports Gordon's position that the limitation period did not start running until the franchise agreement was executed on December 1, 1993. Gordon had retained an attorney to review the franchise documents, and in November, she sent D & K a copy of the agreement containing changes proposed by her attorney. When D & K rejected any changes to its form contract, Gordon executed the D & K agreement on December 1, 1993, as did D & K. Until that date, the parties were still negotiating the terms of the contract, so there had been no meeting of the minds. Moreover, the franchise agreement itself provides that:

> This agreement shall not be valid until executed by a duly authorized officer of D & K.

Affidavit of Steven J. Holland at Exhibit B (Franchise Agreement, § 17.1). Under these circumstances, the court concludes that Gor-

---

**3.** Sterling's newly-found reliance on the November 1, 1993, date contradicts its Complaint in which it alleges that the franchise transaction dates from December 1, 1993. *See* Complaint at ¶¶ 6 & 7.

don's claim for rescission is not barred by any statute of limitation.

In the alternative, Counterclaim Defendant Joel proposes that Gordon's claim did not accrue until July 25, 1996, which was thirty days after Gordon sent her notice of rescission and the earliest date she could have filed a court action for rescission. Under this theory, the 1996 version of the WFIL would apply. Joel says that Gordon would have no right to rescission under the 1996 WFIL because she cannot prove that she relied on D & K's registration status.

Joel does not cite, nor can the court find, any legal authority supporting this position. Therefore, Joel's argument is rejected.

### C. EQUITABLE DEFENSES

Although the court has ruled that Gordon is entitled to recover under the WFIL, the court must consider whether the other parties' equitable defenses of waiver or estoppel would make rescission unjust in this case. Sterling, D & K, and Joel argue that Gordon waived her right to rescission by continuing to act under the franchise agreement from the fall of 1995—the time she discovered D & K was not registered when it sold her the franchise—until she sent Sterling the notice of rescission in June of 1996.

Gordon says that she has not profited unfairly by continuing to operate under the franchise. Her business did not earn a profit in 1994, 1995, or 1996. *See* Affidavit of Joanne H. Turner at Exhibit 3.

■ Under Wisconsin law, waiver can apply if the following elements are proven:

1. That the person had a right, claim, or privilege in existence at the time of the claimed waiver.
2. That the person who is alleged to have waived such a right had knowledge, actual or constructive, of the existence of his or her rights or of the important or material facts which were the basis of his or her right.
3. That the person waiving such right did so intentionally and voluntarily.

Wisconsin Jury Instructions—Civil, No. 3057. Unreasonable delay may be taken into account in determining waiver. *See Id.,* and in this case the court concludes that Gordon's delay in sending a notice of rescission was not unreasonable under the circumstances. In the fall of 1995, Gordon discovered that D & K was not registered in Wisconsin at the time it sold her the franchise. In June of 1996, she sent the notice of rescission. This was less than a month after Sterling had acquired Gordon's franchise and supporting documents. Gordon sent her notice of rescission and filed this action within the statute of limitation and the court finds no compelling grounds for shortening the limitation period by applying the doctrine of waiver.

■ The doctrine of equitable estoppel has three elements: (1) the actor who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence; (2) the other relies upon that communication; and (3) the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. *See* Wisconsin Jury Instructions, No. 3074. *See also Remedies* § 2.3, at 42. The Counterclaim Defendants have made no attempt to show their reliance or material harm. Therefore, this defense must also fail.

Having weighed the Counterclaim Defendants' weakly supported waiver and estoppel defenses against Gordon's right to rescission under the 1993 version of the WFIL, the court concludes that it is not unjust to rule that Gordon is entitled to rescission and to be restored to her pre-franchise financial position.

### D. HOLDER IN DUE COURSE

Sterling argues that Gordon has failed to state a claim against it because it was not a party to the franchise agreement between D & K and Gordon and because Gordon did not attempt to rescind the agreement until Sterling had acquired D & K's assets. Sterling takes the position that Gordon cannot be excused from paying on the note, even if the franchise agreement is rescinded. Gordon's note to D & K was assigned for value to Norwest, then subsequently assigned for value to Sterling. The Plaintiff says that both Norwest and itself are holders in due course of the note because Norwest took the note without notice of Gordon's claims or defenses. At the time of the assignment Gordon

had not defaulted on the note or asserted any defenses. Sterling believes that it became a holder in due course when it stepped into the shoes of Norwest.

Gordon contends that her note was not a negotiable instrument when she executed it or when it was assigned to Norwest. The note Gordon signed required her to pay $95,-000.00 in principal "together with accrued interest at an annual rate of interest equal to two percent (2%) in excess of the 'reference rate' of interest from time to time in effect at First Bank of Minneapolis, N.A." See Affidavit of J. Patrick McDavitt at Exhibit C(8) (Note at ¶ 1).

Under Wisconsin's version of the Uniform Commercial Code, a negotiable instrument must "contain an unconditional promise or order to pay a sum certain in money." Wis. Stat. § 403.104(1). If the instrument does not order the payment of a sum certain, it is not negotiable and the holder cannot be a holder in due course.

The Wisconsin definition of a "negotiable instrument" was amended in 1996, to include notes with variable rates of interest. However, the amendment applies only to transactions entered into on or after that date. *See* 1995 Act 449, § 100(1). Because the transactions at issue here occurred prior to the effective date of the amendment, Sterling does not argue that the 1996 statute governs, but it does argue, citing a number of cases from other state and federal jurisdictions, that the amendment merely codified the prevailing decisional law. Gordon, on the other hand, cites cases from other jurisdictions ruling that variable rate notes are not negotiable instruments. *See e.g., Northern Trust Company v. E.T. Clancy Export Corporation,* 612 F.Supp. 712 (N.D.Ill.1985); *Morris v. Columbia National Bank of Chicago,* 79 B.R. 777 (N.D.Ill.1987).

Gordon also challenges Sterling's claimed holder in due course status on the ground that Norwest failed to conduct a due diligence investigation prior to being assigned D & K's notes and franchise agreements. She believes that Norwest had constructive knowledge of possible claims or defenses to the D & K franchise.

The parties all agree that Wisconsin courts have never addressed the issue of whether variable rate notes could be considered negotiable instruments prior to the 1996 amendment to Wisconsin's Uniform Commercial Code. The legal authorities appear to be in equipoise and the factual record is insufficient for the court to determine whether Norwest took Gordon's note with actual or constructive notice of her claims or defenses. Therefore, this issue must be resolved at trial.

**E. BREACH OF THE FRANCHISE AGREEMENT**

■ Finally, Sterling maintains that it cannot be held liable for restitution or damages for breach of the franchise agreement by D & K. Sterling points out that, absent unusual circumstances, a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation. *See Wine Imports of America, Ltd. v. Gerolmo's Liquors, Ltd.,* 563 F.Supp. 163, 166 (E.D.Wis.1983).

Gordon has cited nothing which would establish unusual circumstances or remove Sterling's asset purchase from the general rule. Therefore, Sterling will not be held liable for any damages Gordon might be awarded for D & K's breach of their franchise agreement.

**F. SUMMARY**

In sum, the court concludes that:

1. Gordon is entitled to rescission of the franchise agreement;

2. Gordon is entitled to be made whole by being put back in her pre-franchise financial position;

3. Neither the statute of limitation nor the doctrines of waiver or estoppel bar Gordon's remedy of rescission;

4. Sterling is not entitled to unpaid royalties required by the franchise agreement;

5. D & K and Larry Joel are jointly and severally liable for any breaches of the franchise agreement.

***ORDER***

As explained above, Defendant June Gordon's "Motion for Summary Judgment" (filed June 16, 1997) **IS GRANTED IN PART AND DENIED IN PART.**

IT IS FURTHER ORDERED that the Plaintiff's "Motion for Partial Summary Judgment" (filed June 16, 1997) IS DENIED. The Plaintiff has not established that it is entitled to judgment as a matter of law.

IT IS FURTHER ORDERED that the "Motion by Counterclaim Defendants D & K Optical and Larry Joel for Partial Summary Judgment" (filed June 16, 1997) IS DENIED. The Counterclaim Defendants have not established that they are entitled to judgment as a matter of law.